IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SENORA SIMON, § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL ACTION NO. 4:07-CV-374-A |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.     STATEMENT OF THE CASE

Plaintiff Senora Simon filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Simon filed concurrent applications for disability insurance and SSI benefits on October 17, 2003, alleging disability commencing August 28, 2003. (Tr. 95, 284). She maintained her insured status for purposes of disability insurance benefits through March 31, 2006. (Tr. 99).

After the Social Security Administration denied her applications both initially and on reconsideration, Simon requested a hearing before an administrative law judge (the "ALJ"). ALJ Jack W. Raines held a hearing on March 9, 2006, in Fort Worth, Texas. (Tr. 493). Simon waived her right to representation during the hearing. On April 24, 2006, the ALJ issued a decision that Simon was not disabled and was not entitled to disability insurance or SSI benefits. (Tr. 18-26). The Appeals Council denied Simon's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5).

B.     STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to

2

the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUE

Simon contends that the Commissioner's determination is inconsistent with the law and unsupported by substantial evidence because neither the ALJ nor the Appeals Council considered the severity of her bipolar disorder in finding she was not disabled.

D.  ADMINISTRATIVE RECORD

1.  Treatment History

The administrative record provides the following information about Simon's medical history:

Simon suffered a right-sided cerebrovascular accident (CVA)[1] in August 2003, and was hospitalized for ten days. (Tr. 165-67). Diagnostic testing showed endocarditis,[2] which was treated with intravenous antibiotics. After her condition stabilized, Simon was transferred to a rehabilitation center for therapy, where she reportedly made good progress. (Tr. 171-73).

On December 8, 2003, Simon underwent a consultative medical examination with internist James B. Gross, M.D. (Tr. 178). Gross recorded Simon's chief complaints as a heart condition and the CVA she had experienced in August. Simon's symptoms and side-effects from her stroke had improved, but Simon continued to complain of mild weakness in her right hand and right leg. Simon

---

[1] A CVA is also referred to as a stroke and refers to a condition with sudden onset caused by acute vascular lesions of the brain. It may be marked by a variety of symptoms reflecting the focus of infarction or hemorrhage, and it is often followed by permanent neurologic damage. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 11, 1872 (31st ed. 2007).

[2] Endocarditis is an inflammatory alteration of the endocardium, which is the membrane lining of the heart. *Id*. at 624, 625.

had no complaints of chest pain or shortness of breath, and she did not use any assistive device for ambulation. (Tr. 178).

Gross performed a physical examination, which produced no remarkable findings. Simon's gait and station were normal, and she was able to get on and off the table and move about the room without difficulty. (Tr. 179). She was able to heel, toe, and tandem walk. Fine finger control was intact, and sensation was intact to light touch in all extremities. Straight leg raising was negative to ninety degrees in both the supine and seated positions. (Tr. 180). Gross observed no residual weakness, but he noted mildly hyperactive reflexes on Simon's right side. (Tr. 180).

On November 28, 2005, Simon underwent a psychological evaluation to assist in a vocational program with Goodwill Industries. (Tr. 272). Simon told the clinical psychologist, John Savell, Ph.D., that she had "mood swings" and was diagnosed in 2000 with bipolar disorder. She estimated that her depressed phases would last about a day and her manic phases would last for two days. She was taking Wellbutrin for depression and Trazodone to help her sleep. Simon also admitted that she had a substance abuse disorder, with her drugs of choice being crack cocaine and alcohol, but she had been sober for two months and was participating in an outpatient treatment program. (Tr. 273). Simon had divorced in 2002 and resided with her children. Her only income consisted of government-provided benefits. Simon stated that she had graduated from high school and had attended regular classes in school, maintaining a "B" average. She had no psychiatric hospitalizations or anxiety, but reported that she had been emotionally and physically abused in a previous relationship. (Tr. 274).

Savell noted that Simon walked with a slight limp, favoring her right leg, and her right arm

5

hung limply at her side. Simon was cooperative and oriented during the interview, and her thinking was coherent and logical. IQ testing resulted in a verbal IQ score of 72, a performance IQ score of 67, and a full scale IQ score of 67, which was indicative of mild mental retardation. (Tr. 274). Her spelling scores placed her at an eighth-grade level, and her arithmetic skills were at a seventh-grade level. Her reading comprehension was in the average range. (Tr. 277).

Savell's diagnostic impression included bipolar disorder, alcohol dependence, cocaine dependence, and mild mental retardation. Given Simon's history of a stroke, Savell recommended a neuropsychological evaluation to rule out dementia. He also recommended that Simon continue taking medication for her bipolar disorder and participate in a substance abuse treatment program. (Tr. 279).

    2.    Administrative Hearing

Simon testified that she was born September 14, 1966, and she had three children, ages 17, 19, and 22. Her two youngest children lived with her. (Tr. 481). Simon had graduated from high school and testified that she had no difficulty reading, but she was right-handed and had difficulty writing with that hand as a result of her stroke. (Tr. 482). She last worked in 2001 or 2002 as a housekeeper for a nursing home, but she was fired for being late. (Tr. 483). Simon testified that she could no longer work because of impaired mobility on the right side of her body. (Tr. 483-84).

Simon testified that she spent most of her time watching television or reading. She did some housekeeping and light cooking, but her children and her mother helped with the heavier chores. (Tr. 485). Simon was capable of grocery shopping, but her children or someone would accompany her to the store. She testified that she was able to bathe and dress herself. Simon testified that she

6

used public transportation because she had no driver's license. (Tr. 486). She estimated that she could lift twenty pounds if she used both hands. (Tr. 487). Simon admitted smoking cigarettes on an occasional basis and drinking approximately a quart of beer each week. She had most recently used cocaine in February (a month before the hearing), but expressed a willingness to attend a drug rehabilitation program. (Tr. 488). She reported that she had a lot of stress in her life because of her children and financial issues. (Tr. 489).

Vocational expert Shelly Eike testified that Simon's previous work had consisted of light, unskilled jobs. (Tr. 489). The ALJ asked Eike to consider an individual of Simon's age, education, and vocational background with the following limitations:

> They will lift and carry occasionally 20 pounds, lift and carry frequently less than 10 pounds. Stand and walk in an eight hour day no more than two hours. Sit in an eight hour day no more than six hours. No climbing of ramps, ladders, scaffolds, only occasional stairs. No balancing. Occasional stooping, occasional kneeling, occasional crouching, no crawling. No working at unprotected heights. Would have an unlimited ability and use of the left hand. Would be able to do fine work with the left hand and low speed assembly work with the left hand. No high speed assembly with the right hand. Only occasional push, pull with the right hand. Handling frequent bilaterally. Fingering frequent, feeling frequent. Would be able to understand, remember and carry out simple instructions in a simple and routine work environment. Can make simple work related decisions and handle changes in a routine work setting appropriately.

(Tr. 489-90). Eike testified that an individual with these limitations could perform none of Simon's previous work, either as she performed it or as customarily performed, but there would be other work the person could perform. Examples of suitable unskilled work including grading and sorting jobs, with 2,000 positions in Texas and 40,000 positions nationally; hand labor jobs, with at least 3,000 positions in Texas and 50,000 positions nationally; and unskilled cashier positions that would allow for sitting, with an estimated 15,000 positions in Texas and 200,000 jobs nationally. (Tr. 490-

7

91).

### 3. ALJ Decision

The ALJ found that Simon had not engaged in substantial gainful activity after her alleged onset date and that she had the following severe impairments: borderline intellectual functioning, residuals from a stroke, and substance abuse by history. (Tr. 21). The ALJ further found that Simon had no impairment or combination of impairments meeting or medically equaling the criteria of a listed impairment. (Tr. 21). Proceeding with the disability determination process, the ALJ found that Simon had the residual functional capacity (RFC) for light work activity, but she should not stand or walk for more than two hours of a standard eight-hour workday; climb ramps, ladders, or scaffolds; balance or crawl; be exposed to unguarded heights; or perform more than frequent handling, fingering, or feeling activities with her right hand. (Tr. 24). The ALJ further found that Simon was capable of understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work-setting; and performing in a simple and routine work environment. (Tr. 24). Simon's RFC precluded her from performing any of her past relevant work, but based on the vocational expert's testimony, the ALJ found Simon was capable of making a successful adjustment to other work existing in significant numbers in the national economy. (Tr. 25). Accordingly, the ALJ concluded that Simon was not under a disability and was not entitled to disability insurance or SSI benefits. (Tr. 25-26).

### 4. Appeals Council Evidence

In January 2007, Simon submitted additional documents to the Appeals Council that consisted of her treatment records with Tarrant County Mental Health and Mental Retardation

(MHMR) services. The records reflect that Simon sought assistance, including medication, from MHMR intermittently from July 2001 through October 2006. (Tr. 302-421). Her diagnoses included bipolar disorder, alcohol dependence, and cocaine dependence. (Tr. 409-12).

D. DISCUSSION

Simon challenges the assessment of her residual functional capacity as unsupported by substantial evidence and a result of legal error. She complains that both the ALJ and the Appeals Council ignored her bipolar disorder and its impact on her ability to work despite the consultative examination and treatment records that document her mental impairment and fluctuating symptoms.

The regulations provide a claimant with the opportunity to forward new and material evidence to the Appeals Council for consideration in deciding whether to grant a request for review of an ALJ's decision. *See* 20 C.F.R. § 404.970(b). Simon took advantage of this opportunity and submitted her MHMR records to the Appeals Council, but the Appeals Council denied her request for review.[3]

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's decision complained of is based. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). The court's role is to consider the administrative record as a whole, which includes the additional evidence submitted to the Appeals Council, in deciding if the

---

[3] Simon asserts that the Appeals Council erred in issuing a boilerplate denial of her request for review. The Appeals Council advised Simon that it had considered the additional evidence she had submitted, but "found that this information does not provide a basis for changing the [ALJ's] decision." (Tr. 5). The Fifth Circuit has rejected arguments that the Appeals Council must provide a more detailed explanation of the weight given to newly submitted evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 n.1 (5th Cir. 2005); *Jones v. Astrue*, 2007 WL 1017095 at *3 (5th Cir. Mar. 29, 2007). Although the Hearings, Appeals and Litigation Law Manual ("HALLEX") provides that the Appeals Council will specifically address additional evidence or legal arguments submitted to it in connection with a request for review, that requirement has been suspended since 1995. *See* HEARINGS, APPEALS AND LITIGATION LAW MANUAL at I-3-5-1, I-3-5-20, and I-3-5-90.

9

Commissioner's decision is supported by substantial evidence. *See id.*

Simon contends that the ALJ should have included bipolar disorder among her severe impairments, but instead failed to even mention her history of bipolar disorder. The ALJ did not have the benefit of Simon's MHMR records,[4] but the ALJ did have copies of medical reports and evaluations that refer to Simon's history of bipolar disorder and her use of antidepressant medication. Nonetheless, the ALJ did not discuss any mental impairment except for Simon's borderline intellectual functioning in his decision. The ALJ limited Simon to simple work, but he did not consider whether her bipolar disorder constituted a severe impairment that would further restrict her residual functional capacity or impact her ability to maintain employment.

The Commissioner asserts that Simon did not allege or testify that she has a disabling bipolar disorder. The ALJ's duty to investigate or fully develop the record does not extend to possible disabilities that are not alleged by the claimant or to disabilities that are not clearly indicated on the record. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Simon did not allege or testify that a mental impairment prevented her from working; however, she has borderline intellectual functioning and her counsel withdrew during the administrative process, leaving her unrepresented during the administrative hearing. In addition, there was information in the record that indicated the existence or at least a history of bipolar disorder that should have triggered the ALJ's interest. The ALJ had a consultative psychological evaluation that referred to Simon's bipolar disorder by history and her use of medication for depression and sleep disturbances, and the examining psychologist

---

[4] Simon's MHMR records from 2001 were included in the record before the ALJ, but records from her later years of treatment at MHMR were not provided until the case was pending before the Appeals Council. (Tr. 154-64).

recommended that Simon continue taking her medication. Simon's failure to allege a mental impairment initially does not excuse the ALJ's omission.

The Commissioner also argues that the record, including the MHMR records, do not reflect that Simon's bipolar disorder is disabling and that her credibility is undermined by her substance abuse and noncompliance with MHMR treatment recommendations. The Commissioner, however, is referring to administrative determinations that the court should review, not determinations that the court should make as an initial matter. *Cf. Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(noting that ALJ's decision must stand or fall on the reasons set forth in the ALJ's decision as adopted by the Appeals Council). Even if the court agreed with the Commissioner's position that Simon's bipolar disorder did not result in per se disabling mental limitations, the Commissioner does not address whether the impairment is a severe impairment as defined in this Circuit or imposes additional work-related limitations that would be relevant to the ALJ's inquiry at Step Five. *See Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir. 1988)(distinguishing disabling impairments from severe impairments).

Based on the record as a whole, including the evidence submitted to the Appeals Council, the ALJ's assessment of Simon's severe impairments and her residual functional capacity are not supported by substantial evidence. This action should be remanded to allow the Commissioner an opportunity to assess the nature of all of Simon's documented impairments and their effect on her residual functional capacity, with the assistance of medical or vocational experts as the Commissioner deems necessary.

Simon also complains that the ALJ did not discuss why her mental retardation fails to meet or equal Listing 12.05C:

> 12.05 Mental retardation: Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, app. 1, § 12.05C. If a claimant's impairment is in the Listing of Impairments or is found to be equivalent to a listed impairment, this raises the presumption of disability that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

At Step Three of the sequential evaluation process, the ALJ found that Simon had no impairment meeting or equaling any listed impairment. In particular, the ALJ found no evidence of a mental impairment imposing "'marked' limitation in any two categories of the 'B' criteria under section 12.05 in the Listing of Impairments." (Tr. 21). But this finding applies only to Listing 12.05D[5] because none of the other categories in Listing 12.05, including Listing 12.05C, require a

---

[5] Listing 12.05D requires the same preconditions as the other subsections of Listing 12.05 plus the following:
    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.
20 C.F.R. Part 404, Subpart P, app. 1, § 12.05D.

finding of "marked" impairment in functioning. *See* 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00A (noting that structure of listing for mental retardation is different from that of other mental disorder listings). The ALJ's decision does not discuss why Simon's low IQ score in combination with the residuals of her stroke do not satisfy Listing 12.05C. *See generally* 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00A (explaining that the other physical or mental impairment contemplated by Listing 12.05C must be severe as defined by 20 C.F.R. § 404.1520(c) and § 416.920(c)). On remand, the Commissioner should reconsider and more fully address whether Simon meets or equals the criteria of Listing 12.05C.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until January 25, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.

*See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until January 25, 2008 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JANUARY 4, 2008.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE